IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AMY McBRIDE, | * | |
| Plaintiff, | | |
| v. | * | CIVIL ACTION NO. RDB-14-984 |
| | | |
| THE MARYLAND CORRECTIONAL | * | |
| INSTITUTE FOR WOMEN, et al., | | |
| Defendants. | * | |
| | *** | |

## MEMORANDUM OPINION

Pending is a Motion to Dismiss, or in the alternative, Motion for Summary Judgment filed by Defendants, the Maryland Correctional Institution for Women, Warden Carrol A. Parish,[1] the Maryland Department of Corrections, and the Department of Labor Licensing and Regulation. ECF 25. Plaintiff has responded and Defendants have replied.[2] ECF 27 & 36. Upon review of papers and exhibits filed, the Court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated below, the dispositive motion will be granted.

### Background

The case was instituted upon receipt of a civil rights Complaint filed by Plaintiff Amy McBride.[3] ECF 1. Plaintiff claims her right to access the courts was denied while she was held at Maryland Correctional Institution for Women. ("MCI-W"). She states that inmates confined at MCI-W are permitted to use the institution's library once per week. She indicates that at an

---

[1] Warden Parrish is no longer the Warden at MCI-W. Warden Chippendale is the current Warden at MCI-W.

[2] The Court is in receipt of additional correspondence from Plaintiff wherein she reiterates and expands via narrative form her complaints regarding access to the legal library and legal materials. *See e.g.* ECF 12, 15, 18, 35. To the extent Plaintiff intended to amend her complaint beyond her complaint of denial of access to the Courts due to an inadequate law library, such claims are not properly before the Court.

[3] At the time the Complaint was filed McBride was a pretrial detainee housed in Lebanon, Pennsylvania. She is now incarcerated at MCI-W. Her claims concern the alleged inadequacy of legal materials and access to legal materials provided to inmates housed at MCI-W.

1

unspecified time a problem arose whereby inmates were not provided their passes to access the library or other areas of the institution. *Id.* Plaintiff indicates that the materials contained in MCI-W's library is limited generally and in particular as to legal materials concerning laws beyond the State of Maryland. *Id.*, p. 4. Plaintiff indicates that "if there was an issue with law outside the State of Maryland...the inmate was/is at a complete loss to have any redress." *Id.* Plaintiff states that many times when she went to the legal library she was not able to use the computer with Lexis/Nexis because it was already used by another inmate and that on at least one occasion she was not able to use Lexis/Nexis because the program had expired. *Id.*, p. 4-5. Additionally, Plaintiff claims that her requests for additional time in the law library were denied by the Warden. *Id.*, p. 5. Plaintiff further indicates her efforts to use LASI4 resulted in delays in processing her request and her being provided wrong and incomplete information. *Id.*, p. 5.

Plaintiff states that in November of 2012, she was to be transported for a court appearance. She attempted to take a box of legal materials with her but the DOC transport refused to allow her to take the materials. *Id.* Plaintiff states that Officer Booz agreed to hold the box of legal materials in her office until she returned. *Id.*, p. 8.

When Plaintiff arrived at the Circuit Court for Anne Arundel County, a State's Attorney asked her to sign a waiver of extradition. Plaintiff declined advising that she had been advised that no detainers were lodged against her in Maryland or Pennsylvania. Plaintiff was presented with the detainer and she advised the Assistant State's Attorney that she did not have access to her legal resources and did not know about it so she was not willing to sign and would give up her speedy trial rights and await the appellate process for her case in Maryland. *Id.*, p. 9.

---

[4] Library Assistance to State Institutions is a service provided by the Prisoner Rights Information System of Maryland whereby state inmates may request and receive copies of legal materials not maintained in their institution's legal libraries. *See e.g.* ECF 25-2

2

Plaintiff indicates that when she returned to MCI-W the library was closed for a variety of reasons throughout the following month. Plaintiff requested unspecified materials but did not receive them. Plaintiff was returned to court several days later without having been able to research the issues regarding her extradition. She was advised at that time that the extradition would be finalized that day. Plaintiff explained that the library had been unavailable to her. *Id.*, p. 11. Plaintiff was taken before a Judge, where she explained the problems with access to legal materials. The Judge directed she be provided a Public Defender. Plaintiff indicates that she spoke with the attorney that day, waited, and then was returned to MCI-W without any understanding of what had occurred in the court room. *Id.*, p. 11

Upon her return to MCI-W, the legal library and/or computer access therein remained unavailable to her. Approximately a month later Plaintiff returned to court. *Id.*, p. 12. Plaintiff again advised the court that she had no access to legal materials. *Id.*

Plaintiff returned to MCI-W where again she was denied access to legal materials via access to the law library or a computer. *Id.*, p. 13. She indicates that her further efforts to use LASI were delayed and she was again provided the wrong materials to challenge her extradition. *Id.*

On January 12, 2013, Plaintiff was extradited to the Lebanon County Correctional Facility (LCCF) in Pennsylvania as a pretrial detainee. Plaintiff states that LCCF has no legal resources for women and denied women access to the library. *Id.* Plaintiff states that she wrote to the Chief Attorney of the Collateral Review Division of the Maryland Public Defenders' Office regarding her lack of access to Maryland and/or Pennsylvania legal materials. *Id.*, p. 14. She asked that the Chief Attorney assign her an attorney to write her request for post-conviction relief and to keep

her right to file a federal habeas petition preserved. *Id.* On an unspecified date, Plaintiff was assigned a Public Defender from the Collateral Review unit. *Id.*, p. 15.

In sum, Plaintiff alleges that from May of 2011 to July of 2011 while she was housed at MCI-W she was denied access to an adequate library. *Id.*, p. 16.

Defendants offer that MCI-W's library is operated by the Department of Labor and Licensing. ECF 25, Ex. 1. In 2012, access to the library for inmates housed at MCI-W were permitted to access the library on the day and time scheduled for their housing unit. ECF 25, Ex. 2; Ex. 1. Each housing unit was assigned one day a week to sign up for the legal library. Inmates were required to sign up a week in advance. *Id.*, Ex. 1. During the relevant time records reflect that Plaintiff signed up to use the legal library on several dates from mid-August through November, 2012. *Id*, Ex. 1, pp. 11-17.

Legal research was provided to inmates via external hard drive containing Lexis/Nexis software. *Id.*, Ex. 2. From 2012, until November 2014, the Lexis/Nexis software was kept in the librarian, Mr. Malveaux's office due to security concerns. The external hard drive was attached to the computer on an as needed basis and took a few minute to attach. *Id.* Malveaux indicates that the Lexis/Nexis hard drive is updated quarterly. *Id.*

LASI addressed Lexix/Nexis updates as follows:

Although it may be alleged that the software becomes outdated, the information pertaining to the law and cases is updated quarterly. The update generally includes any new reported cases to the law and cases is updated quarterly. This update generally includes any new reported cases or changes to the court rules or newly established laws or acts. When an update is issued it does not take away from what was already there, it only adds to the information that was already, there. The update comes in the form of an EHD (external hard drive). The EHD's are distributed to the state librarians directly from Lexis Nexis. The EHD's are numbered with an ordered number system to ensure that the librarian has the most recent update. Currently we are using publication R38. The system at MCE was updated on December 23, 2014. According the Lexis Nexis EHD the information contained on the R38 update contains information up to December 11, 2014.

4

*Id.*, Ex. 1, p 45.

In September of 2012, the Lexis/Nexis hard drive expired while awaiting the updated drive. *Id.*, Ex. 2. Malveaux avers that during this time inmates were able to conduct legal research using LASI requests, conducting research through library reference materials, or requesting the assistance of the librarian. Additionally, the 2012 MCI-W handbook provided that in addition inmates could contact their case manager specialist for assistance in obtaining legal assistance. *Id.*, Ex. 1, p. 39. Malveaux avers that if an inmate specifically asked for research assistance he would provide help. *Id.*, Ex. 2.[5]

In regard to Plaintiff's complaint that in October of 2012, her requested LASI request was delayed and provided inaccurate research, Defendants indicate that from October 2012 through January 2013, Plaintiff submitted four LASI request forms. *Id.*, Ex. 2. Plaintiff's October 3, 2012 request was returned to Plaintiff on October 9. *Id.*, Ex. 2; Ex 1, p. 5. Plaintiff received the request on an unspecified date as evidenced by her signing but not dating the form. *Id.*, Ex. 2, Ex 1, p. 6. A second request for materials dated October 3 contains a note indicating it was completed on November 18th. *Id.*, Ex. 2, Ex 1, p. 7. The request also contains a note indicating, "I cannot make out what these are." *Id.* Plaintiff's November 7 LASI request was completed on November 15th. Her December 12 request was completed on December 21. *Id.*, Ex. 2, Ex 1, pp. 8-9.

Plaintiff indicates that her access to the library was significantly reduced in November and December 2012 which negatively impacted her ability to defend her extradition to Pennsylvania.

---

[5] The Court observes that according to Plaintiff the two issues that she was interested in researching were her extradition to Pennsylvania and Maryland post-conviction remedies. ECF 1. In both cases it appears she was represented by counsel. During her extradition hearing, Plaintiff states, "At that point the judge stopped everything stating the Plaintiff needed to be taken to a cell and provided a Public Defender. The Plaintiff spoke with the attorney and waited. The DOC transport came back and stated 'the judge said your done.'" ECF 1, p. 11. It is unclear whether she was represented by counsel at her subsequent hearing where her extradition to Pennsylvania was ordered. *Id.* As to her post-conviction proceedings she indicates that she wrote to the Maryland Public Defender's Office, Collateral Review Division requesting they pursue post-conviction remedies on her behalf and she was contacted by counsel from that office. *Id.*, p. 14-15.

5

MCI-W post logs and Malveaux's averments reflect that the library was not closed for the majority of November and December as alleged. *Id.*, Ex. 3, Ex. 2. The library was closed on five dates during the relevant time period: November 5, 9, December 3, 10, 20. *Id.*, Ex. 3. When Malveaux is on leave from the institution he requests a substitute librarian. If a substitute librarian is not available the library is closed for the day. *Id.*

Malveaux avers that he does not recall former Warden Parrish denying Plaintiff additional time to research legal issue. *Id.* Ex. 2. Malveaux rarely turns down an inmate who requests additional time for a legal issue unless there is a security or administrative concern raised by the administration. *Id.*

In December of 2012 the legal library's computer/hard drive was stolen. After the assistant warden threatened to lockdown the library an inmate advised where the hard drive could be located. *Id.* Ex. 2. After retrieving the hard drive Malveaux provided it to the assistant warden for investigation. The library was without the computer for approximately one week. *Id.* Ex. 2.

**Standard of Review**

A.   Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 563. The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873

(4th Cir. 1989), legal conclusions couched as factual allegations, see *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, see *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

B.  Motion for Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

## Analysis

### A. Sovereign Immunity

Under the Eleventh Amendment, a state, including its agencies and departments, is immune from federal lawsuits brought by its citizens or the citizens of another state, absent consent. *See Penhurst State Sch. and Hosp. v. Halderman*, 465 U. S. 89, 100 (1984); *see also Global Mail Ltd. V. U.S. Postal Serv.*, 142 F.3d 208, 210 (4th Cir. 1998) ("Sovereign immunity deprives a court of jurisdiction to hear a case."). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in State courts, *see* Md. Code Ann., State

Gov't § 12-201(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. Thus, Plaintiff's Complaint against the Maryland Correctional Institution for Women,[6] the Maryland Department of Corrections, and the Maryland Department of Labor, Licensing and Regulation, agencies within the State of Maryland, is barred by the Eleventh Amendment, and it will be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. The only viable named Defendant is Warden Parrish.

## B. Failure to Exhaust Administrative Remedies

The Court must first examine Defendants' assertion that Plaintiff failed to exhaust her administrative remedies prior to filing suit. The Prisoner Litigation Reform Act provides, in pertinent part:

> (a) Applicability of administrative remedies
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e.

The Supreme Court has interpreted the language of this provision broadly; holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thus, the exhaustion provision plainly extends to Plaintiff's allegations. Her Complaint must be dismissed, unless she can show that she has satisfied the administrative exhaustion requirement under the PLRA or that Defendants have

---

[6] To sustain an action under 42 U.S.C. § 1983, the Plaintiff must demonstrate that: (1) she suffered a deprivation of rights secured by the Constitution of the United States; and (2) the act or omission causing the deprivation was committed by a person acting under color of law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Because Maryland Correctional Institution for Women is not a "person" subject to suit or liability under § 1983, Plaintiff's complaint against "the Maryland Correctional Institute for Women" shall be dismissed.

forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 286 F.Supp.2d at 530; *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where Plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated is the first of three steps in the Administrative Remedy Procedure ("ARP") process provided by the Division of Correction to its prisoners. If this request is denied, the prisoner has ten calendar days to file an appeal with the Commissioner of Correction. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the Inmate Grievance Office ("IGO"). *See* Md. Code Ann. Corr. Serv. §§ 10-206, 10-210; Md. Regs. Code title 12 § 07.01.03.

Administrative remedies must, however, be available to the prisoner and this Court is "obligated to ensure that any defects in administrative exhaustion were not procured from the

action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

*Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008). *see also Blake v. Ross*, __ F.3d __, 2015 WL 2405241 (4th Cir. May 21, 2015).

Thus, Plaintiff's claims must be dismissed if Defendants raise the affirmative defense and also prove that Plaintiff has failed to exhaust available remedies. *See Jones*, 549 U.S. at 216 – 17 (failure to exhaust is an affirmative defense and inmates are not required to demonstrate exhaustion in their complaints). The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase v. Peay*, 286 F. Supp. 2d 523, 530 (D. Md. 2003); *Booth*, 532 U.S. at 735 (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F. 3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review). Exhausting administrative

remedies after a complaint is filed will not prevent a case from being dismissed for failure to exhaust administrative remedies. *See Neal v. Goord*, 267 F. 3d 116, 121-22 (2d Cir. 2001) (overruled on other grounds). Exhaustion is a precondition to filing suit in federal court. *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (prisoner may not exhaust administrative remedies during the pendency of a federal suit).

Administrative Remedy Coordinator Valentrina White avers that she has searched Plaintiff's Administrative Remedy (ARP) index and has located no record indicating that Plaintiff filed an ARP regarding inadequate access to MCI-W's law library or any other hindrance to her legal research. ECF 25, Ex. 8. Nor did Plaintiff file an ARP regarding property claims. *Id.* In 2012, Plaintiff filed four ARPs; an ARP regarding mail filed September 5, 2012; an ARP regarding dietary issues filed on October 11, 2012; and two ARPs regarding maintenance issues filed on October 22, 2012. *Id.*, Ex. 2, pp. 6-8.

Scott Oakley, Executive Director of the Inmate Grievance Office ("IGO)" avers that as of August 6, 2014, Plaintiff filed three grievances with the IGO. *Id.*, Ex. 9. None of Plaintiff's complaints with the IGO concerned the facts alleged in the instant complaint.

Plaintiff does not dispute that she failed to file an ARP concerning her claims of denial of access to legal materials and failure to transport her property. ECF 27, p. 13. Rather, Plaintiff claims that she found the administrative remedy process "non–existent." *Id.* Plaintiff delineates the numerous specific complaints she claims to have made during the time at issue regarding inadequate heating, safety concerns with the roof and wiring, vermin, cracking in the ceiling "sound absorbers," cold showers, lack of ADA compliance, lack of appropriate clothing, the limited time to purchase fans, and issues regarding the medical department. *Id.*, pp. 13-14. Plaintiff indicates that the foregoing issues were brought to Warden Parrish's attention by her but

were never addressed. *Id.*, p. 14. Plaintiff does not indicate that she followed the administrative remedy process in regard to any of the foregoing claims.

Plaintiff indicates that when called to the Warden's office to discuss a letter she sent to the Governor regarding "inhumane conditions of confinement" she declined to discuss same with the Warden, requesting instead a representative from the Governor's office. *Id.*, p. 17. Plaintiff indicates that before her incarcerations she was, among other things, a community advocate and she "utilized her elected officials in every area...." *Id.*, p. 18. Attached to her opposition to the dispositive motion, Plaintiff attaches an ARP dated December 9, 2014, filed by inmate Angela Grimm. The ARP is not numbered, there is no evidence it was filed with the appropriate DOC staff, and it is unclear what bearing the ARP has to Plaintiff's claims. *Id.*, Ex. 1.

In light of the foregoing, the Court finds that Plaintiff has failed to exhaust her claims regarding lack of access to legal materials and property. Plaintiff failed to institute much less exhaust the ARP process regarding the claims put before this Court. Her subjective belief that the ARP process would be unavailing to her complaints is not a valid basis for declining to participate in the established grievance procedure.

## Conclusion

Defendants' dispositive motions will be granted. A separate Order follows.

Date: July 8, 2015

                                     RICHARD D. BENNETT
                                     UNITED STATES DISTRICT JUDGE